Jon A. Titus, #006501
Darrell S. Husband, #022192
David A. Fitzgerald, #020446
**TITUS, BRUECKNER & BERRY, P.C.**
8355 E. Hartford Drive, Suite 200
Scottsdale, Arizona  85255
(480) 483-9600
jtitus@tbb-law.com
dhusband@tbb-law.com
*Attorneys for APEX, L.P. , an Arizona limited
  partnership; RSV, L.P., an Arizona limited
  partnership; RALPH S. VESCIO; and
  RALPH S. VESCIO REVOCABLE TRUST*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>CLEMENT R ANDERSON<br><br>Debtor. | Chapter 13<br><br>Case No. 2:09-BK-21872-RJH<br><br>**COMPLAINT TO DETERMINE NONDISCHARGEABILITY**<br>**[11 U.S.C. § 523(a)]** |

Creditors APEX, L.P., RSV, L.P., Ralph S. Vescio and the Ralph S. Vescio Revocable Trust (collectively, "Creditors"), by and through undersigned counsel, for their Complaint against Debtor Clement R. Anderson ("Debtor") allege the following:

## JURISDICTION, PARTIES AND VENUE

1. This Complaint is filed pursuant to 11 U.S.C. § 523(a) and Bankruptcy Rules 4007 and 7001, *et seq.* to determine the non-dischargeability of a debt which Debtor owes to Creditors. This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I), 28 U.S.C. § 1334(b) and 11 U.S.C. § 523. This core adversary proceeding relates to the Chapter 13 bankruptcy case entitled CLEMENT R ANDERSON, Case No. 2:09-BK-21872-RJH, presently pending in the United States Bankruptcy Court for the District of Arizona.

2. Venue in this adversary proceeding is properly before this Court pursuant to 28 U.S.C. § 1409.

3. Creditor Apex, LP ("Apex") is an Arizona limited partnership.

4. Creditor RSV, LP ("RSV") is an Arizona limited partnership.

5. Creditor Ralph S. Vescio is an individual and Arizona resident.

6. Creditor the Ralph S. Vescio Revocable Living Trust ("Vescio Trust") is a trust organized under the laws of Arizona.

7. Debtor is a resident of the State of Arizona, whose conduct caused certain events to occur in Arizona, out of which this Adversary Complaint arises.

8. Debtor is one of multiple named defendants in a civil action filed by Creditors in Maricopa County Superior Court, CV2009-051374 (the "Superior Court Litigation"), which relates to Debtor's conduct as alleged herein.

9. All of the occurrences complained of herein occurred within Maricopa County, State of Arizona.

## **GENERAL ALLEGATIONS**

10. Upon information and belief, Debtor is a member and/or manager of Phoenix Advantage Group, LLC, an Arizona limited liability company, which does business in Maricopa County, Arizona under the name of "Network Funding" ("Network Funding").

11. Upon information and belief, Debtor is also a member and/or manager of Greater Phoenix Capital, LLC, an Arizona limited liability company ("Greater Phoenix Capital").

12. Capital Depot, LLC ("Capital Depot") is an Arizona limited liability company, which upon information and belief is affiliated with and/or under the common control of Debtor, Network Funding and/or Greater Phoenix Capital.

13. Upon information and belief, Debtor is a "controlling person" of Network Funding, Greater Phoenix Capital and/or Capital Depot, as such term is defined under A.R.S. § 44-1999.

14. Prior to filing his bankruptcy petition, Debtor, individually and/or as a "controlling

person" of Network Funding, Greater Phoenix Capital and/or Capital Depot, offered to the general public various investment opportunities wherein multiple investors ("Investors") would advance funds to Network Funding, Greater Phoenix Capital and/or Capital Depot (collectively, the "Facilitating Entities"), which would collect and pool the various Investors' funds to be loaned to various third parties at high rates of annual interest (collectively referred to herein as "Hard Money Loans"), with the expectation of earning profits on such investments by collecting payments of accrued interest at a high rate of return guaranteed by Debtor and the Facilitating Entities over periods of 12 to 18 months.

15. In order to induce Investors, including the Creditors, to advance funds to Debtor and/or the Facilitating Entities to fund the Hard Money Loans, Debtor represented and warranted that all of the Hard Money Loans would generate a guaranteed rate of return, be fully secured, safely and conservatively collateralized, and fully documented with a promissory note and a deed of trust to be recorded against real property in the State of Arizona owned by the various borrowers of the Hard Money Loans (collectively, the "Collateral").

16. Debtor solicited such funds from Investors using verbal and written materials, which included, but was not necessarily limited to, a written "General Agreement" to be signed by each investor and the Facilitating Entities (each a "General Agreement"), which promised (amongst other things) a guaranteed rate of return on all money invested to be paid in monthly installments, and also represented and warranted that all money invested in such Hard Money Loans would be fully secured (and therefore safe from the risk of loss) by being adequately and properly collateralized and fully documented with promissory notes and deeds of trust to be executed and recorded against the Collateral.

17. Debtor and the Facilitating Entities also made representations and warranties to Investors, including the Creditors, that Debtor, the Facilitating Entities and each of their principals would actively manage any and all investments to prevent any losses of invested funds.

3

18. Pursuant to such solicitations, representations and warranties by Debtor and the Facilitating Entities, and in reasonable reliance thereon, the Creditors entered into multiple written General Agreements with Capital Depot and/or other Facilitating Entities beginning in or around November of 2004 and continuing through June of 2007, thereby investing and paying to Debtor and/or the Facilitating Entities a combined sum of approximately $751,400, in reliance upon such representations, warranties and covenants.

19. Unbeknownst to the Creditors, most, if not all, such representations, warranties and covenants by Debtor and the Facilitating Entities were false, materially misleading and/or omitted material information and facts, which were necessary to prevent such representations, warranties and covenants from being materially misleading to the Creditors and other Investors.

20. These false and materially misleading statements of fact, and the material omissions, made by Debtor and/or the Facilitating Entities to induce the Creditors to advance funds in connection with various Hard Money Loans, directly and proximately caused the Creditors to sustain losses and suffer damages in the approximate amount of $751,400, plus default interest, late fees, penalties, attorneys' fees and costs, in a total amount to be proven at trial.

## FIRST CAUSE OF ACTION
**[11 U.S.C. § 523(a)(2)]**

21. The Creditors incorporate paragraphs 1 through 20 of this Complaint as though fully set forth herein.

22. Debtor and the Facilitating Entities represented and warranted to the Creditors that any investment in the Hard Money Loans would be fully secure from risk of loss based on the efforts and expertise of Debtor and the Facilitating Entities in managing such investments, the conservative loan-to-value and adequate security provided by the Collateral on all such loans, and the certainty of interest payments to be collected from the borrowers of the Hard Money Loans.

23. Such representations and warranties by Debtor and the Facilitating Entities were false,

materially misleading and/or fraudulently omitted material information necessary to prevent such representations from being fraudulent and/or materially misleading to the Creditors.

24. These false representations and material omissions made by Debtor and the Facilitating Entities were material to the Creditors' decision to invest funds with Debtor and Facilitating Entities.

25. When Debtor and Facilitating Entities made the false representations and material omissions to the Creditors, they knew such statements were false, misleading and/or omitted material information necessary to prevent such statements from being false, fraudulent and/or materially misleading.

26. When Debtor and the Facilitating Entities made the false representations and material omissions to the Creditors, the Creditors were ignorant as to the falsity of the information being provided by Debtor and the Facilitating Entities.

27. When Debtor and Facilitating Entities made the false representations and material omissions to the Creditors, they had the intent to commit fraud and/or to fraudulently induce the Creditors to invest money in Hard Money Loans, in reliance upon said false representations in the manner contemplated.

28. The Creditors relied on the false representations and/or material omissions of Debtor and the Facilitating Entities in deciding to invest in various Hard Money Loans.

29. Based on such reasonable reliance, the Creditors invested the sum of approximately $751,400 with Debtor and/or the Facilitating Entities, which Debtor and the Facilitating Entities have not repaid in accordance with the General Agreements.

30. Pursuant to such fraudulent conduct on the part of Debtor and/or the Facilitating Entities, the Creditors have sustained losses and damages in a principal amount of approximately $751,400, plus accrued interest, default interest, late fees, penalties, costs and attorneys fees, in a combined amount to be proven at trial.

31. Debtor's conduct in fraudulently obtaining investment money from the Creditors

by making false representations and/or omitting material information necessary to prevent such representations from being false and/or materially misleading in conjunction with the Hard Money Loans, and in executing the various General Agreements, renders Debtor's liability to the Creditors non-dischargeable pursuant to 11 U.S.C. § 523(a)(2).

## SECOND CAUSE OF ACTION
### [11 U.S.C. § 523(a)(6)]

32. The Creditors incorporate paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33. Debtor's conduct in fraudulently obtaining investment money from the Creditors by making false representations and/or material omissions, in writing, in conjunction with the Hard Money Loans and in executing the various General Agreements, constitutes a willful and malicious injury by the Debtor to another entity, or the property of another entity.

34. Pursuant to 11 U.S.C. §523(a)(6), Debtor's liability to the Creditors for such malicious injury is non-dischargeable under 11 U.S.C. §1328(b).

35. To the extent it is determined in the Superior Court Litigation that the subject securities fraud was committed by the Facilitating Entities, and not personally by Debtor, Debtor is still personally liable to the Creditors as a controlling person of such entities under A.R.S. §44-1999.

## THIRD CAUSE OF ACTION
### [11 U.S.C. § 523(a)(19)]

36. The Creditors incorporate paragraphs 1 through 35 of this Complaint as though fully set forth herein.

37. Each of the Hard Money Loan investments made by the Creditors to Debtor and/or the Facilitating Entities constitute a security under A.R.S. § 44-1801 and under Federal securities laws codified and interpreted under the Federal Securities Act of 1933 and the Securities Exchange Act of 1934.

38. Debtor's conduct in fraudulently obtaining investment money from the Creditors

by making false representations and/or material omissions, in conjunction with the Hard Money Loans and in executing the various General Agreements without complying with federal and state securities laws, constitutes securities fraud pursuant to A.R.S. § 44-1991, *et seq.,* and 15 U.S.C. § 78a, *et seq*.

39. As a direct and proximate result of Debtor's commission of securities fraud, the Creditors have suffered damages in a principal amount of approximately $751,400, plus accrued interest, default interest, late fees, penalties, costs and attorneys fees, in a combined amount to be proven at trial.

40. To the extent it is determined in the Superior Court Litigation that the subject securities fraud was committed by the Facilitating Entities, and not personally by Debtor, Debtor is still personally liable to the Creditors as a controlling person of such entities under A.R.S. § 44-1999.

**REQUEST FOR RELIEF**

WHEREFORE, Creditors APEX, L.P., RSV, L.P., Ralph S. Vescio and the Ralph S. Vescio Revocable Trust request judgment against Defendant/Debtor as follows:

A. Adjudging that Debtor's indebtedness to Creditors APEX, L.P., RSV, L.P., Ralph S. Vescio and the Ralph S. Vescio Revocable Trust is nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2), 11 U.S.C. § 523(a)(6), and/or 11 U.S.C § 523(a)(19);

B. For the entry of a nondischargeable judgment against Debtor in favor of Creditors APEX, L.P., RSV, L.P., Ralph S. Vescio and the Ralph S. Vescio Revocable Trust in an amount to be proven at trial;

C. For interest at the judgment rate;

D.  For attorneys' fees and costs; and

E.  For such other and further relief as this Court deems just and proper.

RESPECTFULLY SUMBITTED this 14th day of December, 2009.

**TITUS, BRUECKNER & BERRY, P.C.**

/s/  *Darrell S. Husband, #022192*
Jon A. Titus, Esq.
Darrell S. Husband, Esq.
David A. Fitzgerald
8355 E. Hartford Drive, Suite 200
Scottsdale, Arizona  85255
*Attorneys for APEX, L.P. , an Arizona limited partnership; RSV, L.P., an Arizona limited partnership; RALPH S. VESCIO; and RALPH S. VESCIO REVOCABLE TRUST*

**COPIES** of the foregoing were served on all registered parties this 14th day of December, 2009 via the Court's ECF system.

/s/ Kimberly L. Tiano

H:\9384\Bankruptcy\Complaint re Objection to Discharge_Anderson_2009 11 19.doc